IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNA MALONE, *et al.*,      *
                                    *
    Plaintiff,                *
                                    *
v.                                    *     Civil Case No. SAG-19-2412
                                    *
WICOMICO COUNTY MARYLAND, *et al.*, *
                                    *
    Defendants.          *
                                    *
                            *************

## MEMORANDUM OPINION

THIS MATTER concerns a suit by Donna Malone ("Plaintiff"), brought individually and as Administrator of the Estate of her deceased son. Amended Complaint, ECF 19. Plaintiff has sued Wicomico County (the "County") and Conmed, LLC (collectively, "Defendants") for their alleged conduct in connection with the suicide of her son, Thomas Gosier ("Mr. Gosier"), while he was in the custody of the Wicomico County Department of Corrections. The County filed a Motion to Dismiss or, alternatively, for Summary Judgment. ECF 22. Plaintiff filed an opposition, ECF 28, and the County filed a reply, ECF 31. For the reasons explained below, the County's Motion will be DENIED.

I.     **FACTUAL BACKGROUND**

This case involves the tragic death of Plaintiff's son, Mr. Gosier. Mr. Gosier suffered from bipolar disorder and/or schizophrenia, and had a crippling addiction to several drugs. ECF 19 ¶ 12.[1] On August 12, 2016, he was arrested in Salisbury, Maryland, in connection with an alleged theft from a Giant grocery store of several bottles of Benzedrex nasal spray, which is commonly used to mimic the "high" achieved from abuse of amphetamines. *Id.* ¶¶ 13, 16–17. Mr. Gosier

---

[1] The facts are derived primarily from Plaintiff's Amended Complaint. ECF 19.

became emotionally erratic during his arrest, purposefully slamming his head into the car window, and expressing an intent to commit suicide. *Id.* ¶ 18. As a result of Mr. Gosier's behavior, the arresting police officer executed a Petition for Emergency Evaluation, and transported him to Peninsula Regional Medical Center ("PRMC"). *Id.* ¶ 19.

At PRMC, health care professionals diagnosed Mr. Gosier with depression, and discharged him back to the Salisbury Police Department. *Id.* ¶ 25. However, one of the doctors instructed the Wicomico County Detention Center ("WCDC") to return Mr. Gosier to the hospital if he continued to express suicidal ideation. *Id.* ¶ 26.

Upon his discharge from PRMC, Mr. Gosier was placed in a holding tank within the Central Booking Post at WCDC. *Id.* ¶ 29 (stating bail was set at $10,000). Less than an hour after bail was set, Mr. Gosier warned WCDC staff that he would commit suicide "by shredding a mattress." *Id.* ¶ 31. Although staff handcuffed him to a bench, he attempted to rip a phone from the wall. *Id.* ¶ 32. Consequently, Mr. Gosier was placed on "suicide watch," in a cell within the medical unit. *Id.* ¶ 33.

The following day, on August 13, 2016, Mr. Gosier attempted suicide. Specifically, he tore the cover from his mattress, and wrapped it around his neck. *Id.* ¶ 36. However, WCDC correctional officers intervened, and used force to thwart his attempt. *Id.* ¶ 37. In the immediate aftermath, Mr. Gosier was handcuffed and shackled to a gurney for approximately five hours. *Id.* ¶ 40. Although a licensed practical nurse issued an "urgent" referral for him to see a mental health professional, he was denied necessary prescription medication. *Id.*

On August 14, 2016, Mr. Gosier attempted suicide for a second time. *Id.* ¶ 41. He once again tore the lining from his mattress, fashioned a noose, and attempted suicide by asphyxiation. *Id.* Since he was under constant supervision, a correctional officer was able to successfully

2

intervene, but had to use pepper spray to subdue him. *Id.* ¶ 43. The following day, Mr. Gosier was seen by Jarvia Fishell, a licensed clinical professional counselor. *Id.* ¶ 44. Fishell performed a "suicide watch initial assessment," and based on this evaluation, combined with his family history, classified him as a high risk for suicide. *Id.* ¶ 47. She recommended that he should remain on suicide watch. *Id.* ¶ 48.

Based on the two incidents described above, WCDC staff served Mr. Gosier with "Notices of Infraction," for violation of at least ten facility rules. *Id.* ¶ 49. Conmed's Chief Psychiatric Officer evaluated Mr. Gosier, and approved orders to prescribe Vistaril and Zoloft (an anti-depressant). *Id.* ¶ 53. Afterward, Mr. Gosier was removed from suicide watch and placed in solitary confinement (or "disciplinary lockdown"). On disciplinary lockdown, detainees are confined in their cell for at least 23 hours per day. *Id.* ¶ 56. Accordingly, Mr. Gosier was permitted only one hour of recreation in a small common area. *See id.* Whereas "suicide watch" means that detainees are constantly under video surveillance, Mr. Gosier was placed on "welfare watch," in which correctional officers check on detainees every twenty minutes. *Id.* ¶ 71.

As punishment for his infractions, Mr. Gosier was sentenced to forty consecutive days of solitary confinement. *Id.* ¶ 60. On August 19, 2016, Mr. Gosier reported to a correctional officer that "he felt his life was in danger." *Id.* ¶ 66. The officers ignored not only this plea for help, but also his later statement that he was experiencing chest pains. *Id.* ¶¶ 66–67. Nonetheless, for several days, Mr. Gosier was denied meaningful mental health care. *Id.* ¶ 69.

On August 21, 2016, at approximately 12:38 hours, two correctional officers performed a welfare check in Mr. Gosier's cell. *Id.* ¶ 73. At 12:44 hours, Mr. Gosier used toilet paper to obscure the window to his cell. *Id.* ¶ 75. A correctional officer reported to the cell, and found Mr. Gosier in the process of hanging himself from his bunk. *Id.* ¶ 80. WCDC staff performed CPR, and ordered

an ambulance for transport to a hospital. *Id.* ¶ 84. Unfortunately, Mr. Gosier was pronounced dead the following day. *Id.* ¶ 85.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Under Rule 12(b) of the Federal Rules of Civil Procedure, when matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim upon which relief can

be granted under Rule 12(b)(6), the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, before a court may convert a motion to dismiss into one for summary judgment, the opposing party must be afforded reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *See id.*

## III.     ANALYSIS

### A.     Motion to Dismiss

The County has filed a Motion to Dismiss or, alternatively, for Summary Judgment. The County primarily contends that the claims must be dismissed, because Plaintiff has not sued any individual state actors. ECF 22-3 at 25–27. For suits pursuant to § 1983, the Supreme Court has long held that municipal liability cannot be imposed on the basis of *respondeat superior*. *See generally Monell v. Dep't of Soc. Servs. Of N.Y.*, 436 U.S. 658 (1978). Furthermore, in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), the Supreme Court curbed the ability of factfinders to render municipalities liable, without making a concomitant finding for individual state actors.

In *Heller*, Ronald Heller sued the city of Los Angeles, members of the Los Angeles Police Commission, and two individual police officers. *Id.* at 797. He claimed that officers initiated an arrest without probable cause, and used excessive force. *Id.* The trial court held a bifurcated trial, and first heard the claims against one of the individual officers. *Id.* After the jury found in favor of the individual officer, the court dismissed the action against the city and the police commission. *Id.* at 798. On appeal, the Court of Appeals for the Ninth Circuit reversed, explaining that Heller could have mounted a constitutional claim against the city, notwithstanding the jury's verdict in favor of the police officer. *Id.* However, the Supreme Court reversed the Ninth Circuit:

> Neither *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages

6

> against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.

*Id.* at 799.

This case is readily distinguishable from *Heller*, because a jury has not made a finding in favor of individual state actors. Although Plaintiff originally sued, but voluntarily dismissed her claims against several individuals, this case does not present the same risk of inconsistent verdicts. To demonstrate the difference between this case and *Heller*, *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010), is instructive.

In *Thomas*, the mother of a pretrial detainee sued a county sheriff's department under § 1983, after her son died from pneumococcal meningitis. *Id.* at 297. At trial, a jury awarded damages in favor of the plaintiff and, correspondingly, against the County and several individual officers. *Id.* On appeal, Cook County argued, *inter alia*, that it could not be held liable under *Monell*, because none of its employees were found to have violated the pretrial detainee's constitutional rights. *Id.* at 304. Distinguishing *Heller*, the Seventh Circuit rejected the County's insistence for "a rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*. This is an unreasonable extension of *Heller*." *Id.* at 305. The Court analyzed the particular claims at issue, and concluded that a jury could have found that the County was liable even if its employees were not. *See id.* (explaining that "[i]t is not difficult to reconcile the verdicts in this instance" because of possible breakdowns in the County's policies).

Under *Monell*, a municipality is subject to suit via § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694; *see also Davison v. Randall*, 912 F.3d 666, 688–89 (4th Cir. 2019) Here, Plaintiff has plausibly alleged that Mr. Gosier's death is attributable to several deficiencies in Defendants' policies. For instance, Plaintiff

7

identified the policy of allowing inmates placed in solitary confinement — regardless of their mental health history — to have a standard mattress, bedding, and top bunk in their cell. *See* ECF 19 ¶ 70. Additionally, Plaintiff plausibly alleged that because of Defendants' policy, Mr. Gosier was not provided with mental health treatment, but instead was sanctioned with solitary confinement.  *Id.* ¶ 60. Plaintiff also contrast "suicide watch" with the less restrictive "welfare watch" policy, the latter in which correctional officers check on inmates only every twenty minutes. *Id.* ¶¶ 71–72.

The Court expresses no view on Plaintiff's likelihood of demonstrating, ultimately, that any of these policies were deficient or contributed to Mr. Gosier's tragic death.  Nonetheless, the County has incorrectly asserted that Plaintiff's failure to name individual actors as defendants is a "fatal" flaw in the Amended Complaint. Indeed, the County concedes, in its Reply, that when a policy or custom inflicts constitutional injury, suit against individual state actors is not a required precursor for municipal liability. *See* ECF 31 at 10–11.

### B. Summary Judgment

The County contends that "no amount of discovery can cure the fatal pleading defect" present in Plaintiff's Amended Complaint. ECF 31 at 1 n.1. As explained above, the defect identified by the County is not fatal to the litigation at this stage. Furthermore, the Fourth Circuit has explained that "a party must be afforded a 'reasonable opportunity for discovery' before a Rule 12(b)(6) motion may be converted and summary judgment granted." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Here, Plaintiff has not been afforded with such an opportunity.  The briefing from both parties contemplates that a case of this type is a fact-intensive inquiry. For instance, the County acknowledges that in order to prove that WCDC maintained a deficient policy or custom, Plaintiff will have to demonstrate (1) an express policy, (2) decisions of a person with final policymaking authority, (3) deliberate indifference to the rights of Mr. Gosier, or (4) a persistent

and widespread practice. *See* ECF 22-3 at 26 (quoting *Lytle*, 326 F.3d at 471). To make this showing, Plaintiff requires, and will be allowed, an opportunity to gather information through the customary discovery process.

### C. Supplemental State Law Claims

The County seeks dismissal of Counts IV and V on the grounds that WCDC is entitled to governmental immunity, based on its operation of a detention center.[2] ECF 22-3 at 27–28. Under Maryland common law, a local government is immune from tort liability when it functions in a "governmental" capacity, but it enjoys no such immunity when it is engaged in activities that are "proprietary" or "private" in nature. *Zilichikhis v. Montgomery Cty.*, 223 Md. App. 158, 192 (2015). In prior cases, Maryland appellate courts have found that numerous functions are entitled to governmental immunity, including the operation of courthouses, health departments, town pools, and public parks. *Jones v. Montgomery Cty.*, 2016 WL 1321396, at *4 (Ct. Spec. App. Md. Apr. 5, 2016). In *Jones*, a Maryland Court found that Montgomery County was immune from tort liability based on its operation of a detention facility. *Id.* at *6. Importantly, however, the Court analyzed (1) the legislative authority by which the County operated and (2) the extent to which the County delegated authority to private entities. *Id.* at 5–6 ("[A] county would not be precluded from using a private facility for its prison needs, as long as there were sufficient guidelines to ensure that the facility act [sic] in accordance with the legislative will").

Here, the County has provided no information about the legislative authority by which WCDC operates, nor about the particular arrangement between WCDC and Wicomico County. Given the Court's decision not to convert this Motion into one for Summary Judgment, as explained above, dismissal is not warranted on the present record. *See Zilichikhis*, 223 Md. App.

---

[2] Plaintiff alleges negligence and wrongful death in Counts IV and V, respectively.

9

at 192 ("There is no universally accepted or all-inclusive test to determine whether a given act of a municipality is private or governmental in its nature, but the question is usually determined by the public policy in the jurisdiction where it arises."); *see also Montgomery Cty. v. Fones*, 2019 WL 12222949, at *17 (Ct. Spec. App. Md. Mar. 14, 2019) (explaining that the County should have been deemed immune from liability at the motion to dismiss stage *or* at the summary judgment stage).[3] The County may, of course, raise this issue again in a motion for summary judgment at the appropriate time.

## IV. CONCLUSION

For the reasons set forth above, the County's Motion to Dismiss or for Summary Judgment, ECF 22, is denied. A separate Order follows.

Dated: March 23, 2020

/s/
Stephanie A. Gallagher
United States District Judge

---

[3] With respect to Count III, the County asserts that "the evidence in the summary judgment record negates even the suggestion of deliberate indifference." ECF 22-3 at 29. Because the Court will not covert this Motion into one for summary judgment, this Count will not be dismissed at this time.